McBRIDE, Judge.
This is a petitory action. Plaintiffs, the widow and heirs of Anthony Billa (who died May 7, 1942), allege themselves to be the owners of Lot A, Block 33, Oakdale Subdivision, Jefferson Parish, which lot Anthony Billa acquired by purchase from Oakdale Improvement Company by act under private signature on January 21, 1920, C.O.B. 50 folio 346, Jefferson Parish. Anthony Billa never had corporeal possession nor did plaintiffs. The petition alleges that defendant, Clarence Gabriel, is in physical possession, and plaintiffs pray for judgment recognizing them as owners and as such entitled to full and undisturbed possession.
Defendant in his defense sets up his acquisition of title to the same lot by purchase from City Farms, Inc., on March 23, 1946, by authentic act, C.O.B. 223 folio 131, Jefferson Parish. He avers he purchased in good faith and without knowledge of any defect in the title, and that continuously since 1947 he has had actual, physical, and corporeal possession, and has acquired a good and valid title by the prescription of ten years.
After trial, judgment was rendered in defendant’s favor dismissing plaintiffs’ suit and they have appealed.
Of course, were it not for the plea of prescription of ten years interposed by defendant, plaintiffs’ title would prevail because it is the most ancient.
Clarence Gabriel purchased the property in 1944 while he was in the armed services, but did not take title thereto until March 23, 1946. Pie cut the grass and levelled the ground during 1946, and on November 7 of that year had the property surveyed. During the year 1947 Gabriel began the construction of a two-room house and had all the studs, rafters, and sheathing erected when the hurricane of September 19, 1947, demolished the work. Immediately after the storm in 1947 he began reconstruction of the building, and about December of that year had completed his two-room dwelling which he and his wife moved into about January 1948.
The above testimony emanated from six witnesses. There is not one word of countervailing evidence. Appellants contend that the hurricane was of insufficient velocity to have caused the demolishing of Gabriel’s incompleted dwelling if there had been one, and they point to the testimony of a witness who stated that in that neighborhood only a few slates had been blown from the dwellings. They argue that the claim there was a building on the lot is pure fabrication. The record shows that the storm alluded to by defendant was rathfer severe. From the report of the weather bureau office in New Orleans, it appears that at 6:30 a. m. on September 19, 1947, hurricane force winds were being felt on the eastern edge of metropolitan New Orleans and by 7:30 a. m. Moisant Airport, just west of the city, reported winds of hurricane velocity. We believe there was an incompleted building and that the storm destroyed it; that defendant soon afterward started rebuilding, and that he and his wife moved into the premises in January of 1948.
Appellants also point out that the property was assessed to Gabriel for $50 during each of the years from 1947 to 1949 and that it was only beginning in 1950 the property was assessed for $650, and argue that *49 this circumstance shows that the dwelling could not have been completed until at least 1949. We do not think that the assessments could have the effect of negating the uncon-tradicted testimony of the witnesses defendant produced. Appellants also point to the testimony of one of the witnesses who stated that he visited Gabriel in his home in 1948 and that electricity was being used for lighting. The contention follows that electricity was not installed in the house until about 1950, and that this fact would show that the house was not completed before that year. Of course the witness might have been mistaken as to the year he paid the visit to Gabriel’s home, but we do not think this would detract from the mass of testimony showing that the home was completed and was actually used by Gabriel and his wife from January 1948.
We find it to be a fact that the defendant has had actual, open and corporeal possession of the lot in question since the year 1947. This action was not filed until November 26, 1958, so, therefore, defendant had possessed the property as owner for more than ten years before the suit was filed.
LSA-C.C. art. 3478 provides that he who acquires an immovable in good faith and by just title prescribes for it in ten years. The essentials of such species of prescription are set forth in LSA-C.C. art. 3479. Four conditions must concur: (1) good faith on the part of the possessor; (2) a title which shall be legal and sufficient to transfer the property; (3) possession during the time required by law; and (4) an object which may be acquired by prescription. The possessor in good faith is he who has just reason to believe himself master of the thing which he possesses although he may not be in fact. LSA-C.C. art. 3451. Good faith is always presumed in matters of prescription, and he who alleges bad faith in the possessor must prove it. LSA-C.C. art. 3481. To be “just” a title must be legal in form and translative of title such as would have been sufficient to transfer the ownership of the property had it been derived from the real owners, and the purchaser must have received it from a person whom he honestly believed to be the true owner. LSA-C.C. arts. 3483, 3484, 3485, 3486.
To enable one to plead the prescription of ten years, it is necessary that the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal. LSA-C.C. art. 3487. One is presumed to have possessed as master and owner. LSA-C.C. art. 3488. When a person has a title and possesses conformably to it, he is presumed to possess according to the title and to the full extent of its limits. LSA-C.C. art. 3498.
The basis for defendant’s plea of prescription of ten years acquirendi causa conforms to all legal requirements and the plea is valid.
The judgment appealed from its affirmed.
Affirmed.